IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

ALBERT LEWIS; ARTHUR "ART" STILL and his wife LIZBETH STILL; BARRY "DINO" HACKETT and his wife CYNTHIA HACKETT; TODD MCNAIR and his wife LYNETTE MCNAIR; FRED JONES; TIM BARNETT and his wife CHELONDA BARNETT; WALKER LEE ASHLEY; EMILE HARRY and his wife LORI HARRY; CHRIS SMITH and his wife BILLIE SMITH; ALEXANDER LOUIS COOPER; LEONARD GRIFFIN and his wife DAWN SAVITRA GRIFFIN; CHRISTOPHER MARTIN and his wife YOLANDA THOMPSON-MARTIN; JOSEPH PHILLIPS; KEVIN PORTER and his wife ANNJELA HYNES-PORTER

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Plaintiffs,

)
)

vs.

)  Case No.
)

KANSAS CITY CHIEFS FOOTBALL CLUB, INC.

)
)
)

Defendant.

)

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, for the reasons set forth below, Defendant Kansas City Chiefs Football Club, Inc. ("Chiefs"), by its undersigned attorneys, files this Notice of Removal to remove the claims against it in this action from the Circuit Court of Jackson County, Missouri, to the United States District Court for the Western District of Missouri pursuant to 28 U.S.C §§ 1331, 1367, 1441, and 1446. Removal is made pursuant to 28 U.S.C. § 1331 on the basis of federal question jurisdiction and, to the extent that federal question jurisdiction pertains to some but not all of Plaintiffs' claims, 28 U.S.C. § 1367. The grounds for removal are as follows:

## I. INTRODUCTION AND BACKGROUND

1. On December 5, 2013, Plaintiffs served the Chiefs with their Petition for Damages, filed in the Circuit Court of Jackson County, Missouri, Case No. 1316-CV30043. On December 21, 2013, Plaintiffs filed their Amended Petition in this matter adding additional parties as plaintiffs. Copies of the Petition, Amended Petition, summons, and other documents filed in this action are attached hereto as Exhibit A.

2. Plaintiffs allege the following in their Amended Petition with respect to their employment with the Chiefs:

    a. Plaintiff Albert Lewis was employed as a professional football player with the Chiefs between 1983 and 1994. (Am. Pet. ¶ 1.)

    b. Plaintiff Arthur "Art" Still was employed as a professional football player with the Chiefs between 1978 and 1987. (Am. Pet. ¶ 4.)

    c. Plaintiff Barry "Dino" Hackett was employed as a professional football player with the Chiefs between 1986 and 1993. (Am. Pet. ¶ 7.)

    d. Plaintiff Todd McNair was employed as a professional football player with the Chiefs between 1989 and 1994 and in 1996. (Am. Pet. ¶ 10.)

    e. Plaintiff Walker Lee Ashley was employed as a professional football player with the Chiefs in 1989. (Am. Pet. ¶ 13.)

    f. Plaintiff Tim Barnett was employed as a professional football player with the Chiefs between 1991 and 1994. (Am. Pet. ¶ 16.)

    g. Plaintiff Emile Harry was employed as a professional football player with the Chiefs between 1986 and 1992. (Am. Pet. ¶ 19.)

h. Plaintiff Fred Jones was employed as a professional football player with the Chiefs between 1990 and 1993. (Am. Pet. ¶ 22.)

i. Plaintiff Christopher Smith was employed as a professional football player with the Chiefs between 1986 and 1987. (Am. Pet. ¶ 25.)

j. Plaintiff Alexander Louis Cooper was employed as a professional football player with the Chiefs between 1985 and 1991. (Am. Pet. ¶ 28.)

k. Plaintiff Leonard Griffin was employed as a professional football player with the Chiefs between 1986 and 1993. (Am. Pet. ¶ 31.)

l. Plaintiff Christopher Martin was employed as a professional football player with the Chiefs between 1988 and 1993. (Am. Pet. ¶ 34.)

m. Plaintiff Joseph Phillips was employed as a professional football player with the Chiefs between 1992 and 1998. (Am. Pet. ¶ 37.)

n. Plaintiff Kevin Porter was employed as a professional football player with the Chiefs between 1988 and 1993. (Am. Pet. ¶ 40.)

3. Based upon the allegations in Plaintiffs' Amended Petition, at least one of the Plaintiffs was employed as a professional football player with the Chiefs during various seasons between 1978 to 1998.

4. Plaintiffs allege that the Chiefs' "wrongful conduct" caused them "to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy." (Am. Pet. ¶¶ 3, 6, 9, 12, 15, 18, 21, 24, 27, 30, 33, 36, 39, 42.)

3

5. Plaintiffs allege that the Chiefs' "wrongful conduct" that allegedly caused them to develop the aforementioned conditions includes the following alleged actions:

   a. failing "to exercise the standard of care and skill it was obligated to exercise by reason of its relationship with Plaintiffs, undertakings and assumption of a duty thereby causing, creating or permitting an increased risk of exposure to repetitive brain trauma, and thereby failing to properly safeguard and warn Plaintiffs" (Am. Pet. ¶¶ 79-80);

   b. negligently misrepresenting to Plaintiffs that concussions are not a serious injury and that there are no long-term effects of concussion in NFL athletes (Am. Pet. ¶¶ 88-90);

   c. fraudulently concealing the risk of repetitive head trauma from playing football (Am. Pet. ¶¶ 94, 96-97, 100);

   d. loss of consortium by Plaintiffs-Spouses. (Am. Pet. ¶ 104)

6. The relationship between Plaintiffs and the Chiefs was governed and informed by the collective bargaining agreements ("CBAs") that were negotiated and entered into by the NFL Players Association, which is the exclusive bargaining representative of NFL players, and the NFL Management Council, an entity created by the NFL for the purpose of collective bargaining on behalf of NFL member clubs. All NFL teams, including the Chiefs, are bound by terms of the CBAs. The CBAs "represent[] the complete understanding of the parties on all subjects covered [t]herein." CBA Art. II § 1 (1982), Art. III §1 (1993). The CBAs include, among other terms, provisions relating to player medical care and safety rule-making and dispute resolution.

4

7.      Three CBAs are implicated by this matter. The 1982 CBA was in effect from July 16, 1982 and expired on August 31, 1987, and the 1993 CBA, which was signed prior to the 1993 season. Furthermore, prior to the 1982 CBA, the 1977 CBA governed the relationship between NFL teams and players and thus governed Plaintiff Arthur "Art" Still's relationship with the Chiefs when he began his employment with the Chiefs in 1978 up to the effective date of the 1982 CBA. As such, with the exception of Plaintiffs Walker Ashley, Christopher Martin and Kevin Porter, all of the Plaintiffs commenced, concluded, or commenced and concluded their careers with the Chiefs while there was an executed CBA in place. Additionally, all Plaintiffs played football for an NFL team pursuant to one or more of the above described CBAs.

## II.    GROUNDS FOR REMOVAL

8.      This Court has original jurisdiction of this action under 28 U.S.C. § 1331 because the action is one that is founded on a claim or right "arising under the Constitution, laws, or treaties of the United States." A defendant may remove an action to federal court under 28 U.S.C. § 1441 if the complaint presents a federal question, such as a federal claim. *See Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560 (1968).

9.      Federal question jurisdiction exists in this case based on complete preemption of Plaintiffs' claims by section 301 of the Labor Management Relations Act ("LMRA"). *See Schuver v. MidAmerican Energy Co.*, 154 F.3d 795, 798-99 (8th Cir. 1998) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law" and section 301 of the LMRA "preempts state law claims founded 'directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a

collective-bargaining agreement.'" (citing and quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 394 (1987)).

10. To the extent that any claim in the Amended Petition is not preempted, it "form[s] part of the same case or controversy." 28 U.S.C. § 1367(a). Thus, this court has supplemental jurisdiction over all parties and claims.

11. Section 301 of the LMRA provides that federal courts have original jurisdiction over all "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The Supreme Court has held that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such question arises in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). Thus, section 301 preempts tort claims seeking to vindicate "state-law rights and obligations that do not exist independently of [collective bargaining] agreements" and also preempts claims "substantially dependent upon analysis of the terms of [a collective bargaining] agreement." *Id.*, 471 U.S. at 213, 220; *Schuver*, 154 F.3d at 799 (holding that the plaintiffs' fraud, promissory estoppel, and breach of fiduciary duty claims required interpretation of a collective bargaining agreement).

12. Here, Plaintiffs' claims are preempted because the resolution of those claims is "inextricably intertwined with consideration of the terms of [the CBA]" or "substantially dependent" on an analysis of the relevant provisions of the CBAs, and because they arise under the CBA. *See Allis-Chalmers, 471 U.S. at 213, 215, 220; see also Duerson v. Nat'l Football League*, No. 12 C 2513, 2012 WL 1658353, at *6 (N.D. Ill. May 11, 2012); *Atwater v. Nat'l*

Case 4:14-cv-00004-BP   Document 1   Filed 01/02/14   Page 6 of 14

*Football League*, 626 F.3d 1170, 1178-79 (11th Cir. 2010); *Maxwell v. Nat'l Football League*, No. 11-cv-08394 Order at 2 (C.D. Cal. Dec. 8, 2011); *Pear v. Nat'l Football League*, No. 11-cv-08395, Order at 2 (C.D. Cal. Dec. 8, 2011); *Barnes v. Nat'l Football League*, No. 11-cv-08396, Order at 2 (C.D. Cal. Dec 8, 2011); *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 901-02 (S.D. Ohio 2007).

13. For example, adjudicating Plaintiffs' claims will hinge on provisions of the CBAs relating to player medical care and rule-making. *See, e.g.,* NFL CBA Art. XLIV § 1 (1993) (requiring physician on staff of Member Clubs to inform a player in writing if he has a physical condition that "could be significantly aggravated by continued performance"), *see also* NFL CBA Art. XXXI § 1 (1982),; NFL CBA Art. XXXI § 2 (1982), Art. XLIV § 2 (1993) ("[F]ull-time head trainers and assistant trainers ... [must] be certified by the National Athletic Trainers Association"); NFL Constitution and Bylaws Art. XVII supplement (1982), Art. XVII (1984) ("All determinations of recovery time for major and minor injuries must be by the club's medical staff and in accordance with the club's medical standards" for players categorized as "Reserve/Injured" on the Reserve List);[1] NFL CBA Art. XLIV § 3 (1993) ("A player will have the opportunity to obtain a second medical opinion," and the Club shall bear "the responsibility" for the "the costs of [these] medical services."); 1993 Standard Player Contract ¶ 9 (requiring Member Clubs to provide medical and hospital care as deemed necessary by their physicians in the event a player is injured);[1] NFL CBA Art. XIII § 1(a) (1993) (creating a Joint Committee to

---

[1] *See Clarett v. Nat'l Football League*, 369 F.3d 124 (2d Cir. 2004) ("In the [CBA], the union agreed to waive any challenge to the Constitution and Bylaws and thereby acquiesced in the continuing operation of the ... rules contained therein."); *see also Brown v. Nat'l Football League*, 219 F. Supp. 2d 372, 386 (S.D.N.Y. 2002) ("[The NFL Constitution and Bylaws were] bargained over and included within the scope of the CBA.").

2 *See Sherwin v. Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1177 (N.D.N.Y. 1990) ("The

7

study, among other things, player safety issues); NFL CBA Art. XIII § 1 (1993) (mandating procedures for review, investigation and resolution of disputes involving proposed rule changes that "could adversely affect player safety"), *see also* Art. XI § 8 (1982); NFL CBA Art. XIII § 2 (1993) (inviting player representatives to the Competition Committee meetings "to represent the players' viewpoint on rules").

14. In total, 71 cases asserting allegations similar to those alleged here against the NFL, NFL Properties, and/or Member Clubs of the NFL have been removed to federal court, and none have been remanded to date. Indeed, two separate district courts considering allegations similar to those alleged here–including claims brought by Plaintiffs Phillips and Barnett in actions asserted against the NFL (*Barnes*, No. 11-cv-08396, Order at 2; *Pear*, No. 11-cv-08395, Order at 2)–have recently determined that the NFL properly removed complaints brought by former NFL players because resolution of their concussion-related negligence claims was substantially dependent on, and inextricably intertwined with, an analysis of CBA provisions concerning medical care and treatment of NFL players. In *Duerson*, faced with a negligence claim alleging in part that the NFL "fail[ed] to educate players about the risks of concussions and the dangers of continuing to play after suffering head trauma," and "fail[ed] to implement policies and procedures to prevent David Duerson from returning to play with his injuries," the court held that the claim was preempted because resolution of the claim would require a court to interpret several of the CBA provisions concerning player health and safety. 2012 WL 1658353 at *1, 4. The court reasoned that:

> A court could plausibly interpret those provisions to impose a duty on the NFL's clubs to monitor a player's health and fitness to continue to play football . . . . The NFL could then reasonably exercise a lower standard of care in that area itself.

---

standard player agreement, which is used for every NFL player as required by Article XII, section 2 of the [1982] CBA, is effectively incorporated by reference in that article.").

8

> Determining the meaning of the CBA provisions is thus necessary to resolve Duerson's negligence claim.

*Id.* at \*4 (emphasis added); *see also Maxwell*, No. 11-cv-08394, Order at 1-2; *Pear*, No. 11-cv-08395, Order at 1-2; *Barnes*, No. 11-cv-08396, Order at 1-2 (holding that plaintiffs' concussion-related negligence claims, premised in part on allegations that the NFL failed "to ensure accurate diagnosis and recording of concussive brain injury so the condition can be treated in an adequate and timely manner," were preempted because they are "inextricably intertwined with and substantially dependent upon an analysis of certain CBA provisions imposing duties on the clubs with respect to the medical care and treatment of NFL players," which "must be taken into account in determining the degree of care owed by the NFL and how it relates to the NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its players."); *Stringer*, 474 F. Supp. 2d at 909-10 (wrongful death claim brought by decedent's widow against the NFL based on, among other things, the NFL's alleged failure to regulate adequately practices, games, equipment, and medical care to minimize the risk of heat-related illness, was preempted because resolution of the claim was "inextricably intertwined and substantially dependent upon an analysis of certain CBA provisions imposing duties on the clubs with respect to medical care and treatment of NFL players") (emphasis added). Having determined that at least one federal claim was present, the *Duerson* court exercised supplemental jurisdiction over the remaining claims, and denied the motion to remand. *Duerson*, 2012 WL 1658353, at \*6; *see also Maxwell*, No. 11-cv-08394, Order at 2; *Pear*, No. 11-cv-08395, Order at 2; *Barnes*, No. 11-cv-08396, Order at 2; *Dunn*, 870 F. Supp. 2d at 660.

15. The analysis here is the same as the analysis applied by the courts in *Duerson*, *Maxwell/Pear/Barnes*, and *Stringer*. It makes no difference that the defendant in those cases was

9

the NFL and the defendant here is the Chiefs because the substance of the applicable CBA provisions is the same: the CBAs, Constitutions and Standard Players Contracts set forth the responsibility of the Member Clubs (*i.e.* the Chiefs, in this instance) to provide medical care to NFL players. *See, supra,* ¶ 9; *see also* NFL CBA Art. XXXVI § 1 (1982), Art. LIV § 1 (1993) (establishing a duty of the Member Clubs to provide compensation for workplace injuries by requiring clubs in states where workers' compensation coverage is not compulsory to "either voluntarily obtain [workers' compensation] coverage under the compensation laws of that state or otherwise guarantee equivalent benefits to its players"). In resolving Plaintiffs' claims, the court will need to interpret these provisions to determine the scope of the Chiefs' alleged duty to Plaintiffs and whether the Chiefs acted reasonably. Thus, Plaintiffs' claims are preempted. *See, e.g., Givens v. Tenn. Football, Inc.,* 684 F. Supp. 2d 985, 990-1 (M.D. Tenn. 2010) (holding that player's tort claims against NFL Member Club for failure to provide adequate medical care and intentionally withholding information regarding the true nature of his injury were preempted under section 301 because "whether a physician's failure to advise a player of his medical condition should be imputed to the club or whether the club has a duty independent of the physician to advise a player of his medical condition are 'inextricably intertwined' with the provision of the CBA"); *Jeffers v. D'Allesandra,* 681 S.E. 2d 405, 414 (N.C. Ct. App. 2009) (claims against NFL Member Club were preempted because the "touchstone of [the] claims–no matter how couched or labeled–is that the Member Club acted improperly in providing [the player] medical care through the team physician," which "necessarily derive[s] from the obligations in the CBA"); *Sherwin,* 752 F. Supp. at 1778 (tort claims against NFL Member Club, including for negligence, fraud, and negligent misrepresentation, preempted because "[t]he court

10

cannot resolve plaintiff's claims based on inadequate medical care without interpreting the clauses establishing those duties in the [CBA and Standard Player Contract] agreements").

16. Plaintiffs' claims also are preempted by section 301 because the rights Plaintiffs seek to vindicate "arise under," or, were created, in whole or in part, by the CBAs, and are not based on an independent duty "owed to every person in society." *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 370-71, (1990) (holding in the context of a labor dispute involving unionized employees that, absent an independent duty running from defendants "to every person in society," any such duty to plaintiffs must arise out of the CBA); *see also Schweiss* v. *Chrysler Motors Corp.*, 922 F.2d 473, 476 (8th Cir. 1990) ("[I]f the duty alleged to have been violated by Chrysler 'is created by a collective-bargaining agreement and without existence independent of the agreement,' [the] claim is preempted." (quoting *Rawson*, 495 U.S. at 369)); *Sherwin*, 752 F. Supp. at 1178 (finding fraud claim arose under CBA because "[t]he Colts owed a duty to . . . provide truthful information regarding medical treatment . . . only to their players covered by the standard player agreement and the CBA," not "to every person in society" (quoting *Rawson*, 495 U.S. at 371)).

17. To the extent that any claims in Plaintiffs' Petition arise solely from incidences that occurred during the time periods while the CBAs were not in place, they too are preempted by section 301 because the Chiefs' duty to Plaintiffs is created and informed by the CBAs. Thus this Court would still be required to construe and interpret the terms of the CBAs. In the alternative, this Court has supplemental jurisdiction over all claims forming the same case or controversy as other claims over which this Court has original federal question jurisdiction.

11

18. Plaintiffs' implausible attempt to limit their claims to the period of time of their employment with the Chiefs after the 1982 CBA had expired but before the 1993 CBA became effective does not defeat federal jurisdiction. The Federal District Court for the Northern District of Illinois rejected such an attempt to defeat federal question jurisdiction. *Duerson v. Nat'l Football League*, No. 13 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012). The court held that "it would be exceedingly implausible to contend that [plaintiff's injury] was caused only by trauma suffered from 1987 through early 1993, and not by trauma from the 1983 to 1986 or later in 1993" and that "[a]ny attempt to exclude trauma suffered on certain dates from the claim would thus likely fail." *Id.* at *3.

## III. REMOVAL IS PROCEDURALLY PROPER

19. The Western District of Missouri is the federal district in which the Circuit Court of Jackson County, Missouri is located, which is where Plaintiffs filed their Petition.

20. This Notice of Removal is timely under 28 U.S.C. § 1446(b), which states that "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

21. Written notice of the filing of this Notice of Removal will be provided to Plaintiffs, and a copy of this Notice will be filed in the appropriate state court, as required by 28 U.S.C. § 1446(d). This Notice of Removal is signed pursuant to Fed. R. Civ. Proc. 11. *See* 28 U.S.C. § 1446(a).

22. In filing this Notice of Removal, the Chiefs do not waive any available defenses that may be available, including without limitation jurisdiction, venue, standing, or procedures

12

Case 4:14-cv-00004-BP   Document 1   Filed 01/02/14   Page 12 of 14

for the disposition of this action in accordance with the terms of the CBAs or Plaintiffs' employment contracts with the Chiefs. Furthermore, the Chiefs do not admit any of the factual allegations in the Petition; rather, the Chiefs expressly reserve the right to contest those allegations at the appropriate time.

WHEREFORE, the Chiefs remove this action brought against it in the Circuit Court of Jackson County, Missouri.

Dated: January 2, 2014

/s/ Lee M. Baty
Lee M. Baty, Esq. (#29547)
Theresa A. Otto, Esq. (#43453)
W. Christopher Hillman, Esq. (#48958)
BATY, HOLM, NUMRICH & OTTO P.C.
4600 Madison Avenue, Suite 210
Kansas City, MO 64112-3019
lbaty@batyholm.com
totto@batyholm.com
chillman@batyholm.com
Telephone:    816-531-7200
Telecopy:     816-531-7201

- and -

Brad S. Karp (bkarp@paulweiss.com)
Bruce Birenboim (bbirenboim@paulweiss.com)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
*Pro Hac Vice* pending

ATTORNEYS FOR DEFENDANT

13

***Certificate of Electronic Filing***

I hereby certify that on January 2, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. A copy of the foregoing was sent via U.S. mail, postage prepaid, to the following:

Kenneth B. McClain
Lauren E. McClain
Timothy J. Kingsbury
HUMPHREY, FARRINGTON & MCCLAIN, P.C.
221 West Lexington, Ste. 400
P.O. Box 900
Independence, MO 64051
kbm@hfmlegal.com
lem@hfmlegal.com
tjk@hfmlegal.com
Telephone: 816-836-5050
Telecopy: 816-836-8966

John M. Klamann
Andrew Schermerhorn
Paul D. Anderson
THE KLAMANN LAW FIRM
929 Walnut Street, Suite 800
Kansas City, MO 64106
jklamann@klamannlaw.com
aschermerhorn@klamannlaw.com
panderson@klamannlaw.com
Telephone: 816-421-2626
Telecopy: 816-421-8686

Wm. Dirk Vandever
THE POPHAM LAW FIRM, P.C.
712 Broadway, Suite 100
Kansas City, MO 64105
dvandever@pophamlaw.com
Telephone: 816-221-2288
Telecopy: 816-221-3999

ATTORNEYS FOR PLAINTIFFS

*/s/ Lee M. Baty*
Attorneys for Defendant

14